UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------------X
DAVID BURLINGAME,

Plaintiff,

-against-

Case No. 1:25-cv-01704

ARGO PRIVATE CLIENT GROUP, LTD.,
AURORA HILL, LTD., DANIEL MILLER, RYAN NELSON,
DEREK SCARBOROUGH, LEADING RESPONSE, LLC,
BEACHWOOD INVESTORS GROUP, LLC,
SUEDE NIGHTS, LLC,

Defendants.

~and~

ALLISON R. MILLER

Relief Defendant,

-----------------------------------------------------------------------------------X

# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT RME, LLC D/B/A LEADINGRESPONSE'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

**The Krupnick Firm**
**56 Hammond Road**
**Glen Cove, New York 11542**

## TABLE OF CONTENTS

I. Preliminary Statement……………………………………………………………………..1

II. Issues Presented ……………………………………………………………………………..2

III. Statement of Facts……………………………………………………………………………4

IV. Legal Standard………………………………………………………………………………7

A. Motion to Dismiss Under Rule 12(b)(6)……………………………………………………..7

B. Heightened Pleading Under Rule 9(b)………………………………………………………8

V. Argument……………………………………………………………………………………..9

A. Plaintiff Has Stated a Claim Under Section 12(a)(1) of the Securities Act…………………9

B. Plaintiff Has Stated a Claim Under SEC Rule 10b-5………………………………………..11

C. Plaintiff Has Adequately Alleged Causation and Standing…………………………………14

D. Plaintiff Has Properly Alleged a Claim for Unjust Enrichment……………………………..16

E. The Contemporaneous Email Record Contradicts Defendant's Assertions………………....17

F. Defendant's Lack of Privity Defense Is Legally Irrelevant…………………………………19

VI. Conclusion…………………………………………………………………………………22

Cases

Ashcroft v. Iqbal,556 U.S. 662 (2009) ..........................................................................................7

Basic Inc. v. Levinson,485 U.S. 224 (1988)..........................................................................11,12

Bell Atl. Corp. v. Twombly,550 U.S. 544 (2007) ........................................................................7

Bridge v. Phoenix Bond & Indem. Co.,553 U.S. 639 (2008)................................................. 13

Cruz v. McAneney, 31 A.D.3d 54 (2d Dep't 2006)……… ...................................................16

Georgia Malone & Co. v. Rieder, 19 N.Y.3d 511 (2012) .................................................16, 20

In re Parmalat Sec. Litig., 376 F. Supp. 2d 472 (S.D.N.Y. 2005)................................15, 20, 21

In re Refco Inc. Sec. Litig.,826 F. Supp. 2d 478 (S.D.N.Y. 2011) .........................................17

Lujan v. Defenders of Wildlife,504 U.S. 555 (1992)...............................................................14

Midlantic Nat'l Bank v. Havens, 1994 WL 760822 (S.D.N.Y. Dec. 27, 1994.......................17

Novak v. Kasaks, 216 F.3d 300 (2d Cir. 2000)…...............................................................8,12

Pinter v. Dahl, 486 U.S. 622 (1988)..........................................................................9,10,19,20

Reese v. Triborough Bridge & Tunnel Auth., 91 F.4th 582 (2d Cir. 2024)...........................14

SEC v. Brown, 740 F. Supp. 2d 148 (D.D.C. 2010) ............................................................11

SEC v. U.S. Environmental, Inc., 155 F.3d 107 (2d Cir. 1998) ..........................................21

SEC v. Zandford, 535 U.S. 813 (2002) ...................................................................8,15,20

## Statutes and Rules

17 C.F.R. § 230.506(b) "Regulation D"……………………………………………………..….1,9

Section 12(a)(1) of the Securities Act, Rule 10b-5 of the Exchange Act…………………2, 20 22

Rule 15(a)(2)……………………………………………………………………………….4 22

Fed. R. Civ. P. 9(b)…………………………………………………………………………8

15 U.S.C. § 77l(a)(1)………………………………………………………………...…..9

17 C.F.R. § 230.506(d) ..................................................................................................9

17 C.F.R. § 240.10b-5 ..................................................................................................10

Fed. R. Civ. P. 12(b)(6) ..........................................................................................1,7,19

# I. PRELIMINARY STATEMENT

Defendant RME, LLC d/b/a LeadingResponse ("LeadingResponse") moves to dismiss the First Amended Complaint under Rule 12(b)(6), asserting that it had no direct involvement with Plaintiff and bears no legal responsibility for the fraudulent securities offering at the center of this case. That assertion is contradicted by contemporaneous emails between Plaintiff and LeadingResponse's designated agent, Derek Scarborough, and by the unrebutted allegations and exhibits demonstrating that LeadingResponse designed, managed, and executed the investor seminar campaign used to market the fund. That campaign was financed with Plaintiff's remaining investment capital—approximately $150,000—which was diverted for this purpose without full disclosure and without meaningful return.

The offering itself, as alleged in the First Amended Complaint, was ineligible for exemption under Regulation D because Daniel Miller—one of its principals—was subject to a regulatory bar imposed by the National Futures Association in 2021. That bar rendered the offering disqualified under Rule 506(d). The offering materials omitted any mention of this disqualification and falsely portrayed Miller as a qualified, experienced fund manager.

Crucially, LeadingResponse does not dispute this. Its motion does not challenge the allegation that Miller was barred, nor does it contest the legal effect of that bar under Rule 506(d). It does not claim that the offering was compliant with federal securities law or that the seminars it conducted were legally permissible. LeadingResponse does not attempt to justify or defend the offering in any form. This complete silence on the central illegality alleged should be treated, at a minimum, as a concession for the purposes of this motion to dismiss. Furthermore, to the extent Defendant

intends to later dispute these core facts after failing to address them now, Plaintiff reserves the right to argue that such silence constitutes a waiver or judicial admission applicable to the broader case.

Instead, LeadingResponse focuses entirely on distancing itself from Plaintiff. It claims there was no relationship, no communication, and no legal duty. That is refuted not only by the specific allegations of the First Amended Complaint but also by the email evidence showing that Plaintiff was directly introduced to Scarborough by the fund's promoters, that Scarborough coordinated the seminars using Plaintiff's funds, and that LeadingResponse failed to provide transparency or accountability regarding the results. The claim that LeadingResponse was a mere vendor, detached from Plaintiff and the offering, is legally insufficient and factually untrue.

Plaintiff has stated claims under Section 12(a)(1) of the Securities Act, Rule 10b-5 of the Exchange Act, and unjust enrichment. The First Amended Complaint is supported by detailed factual allegations, substantiated by attached exhibits, and meets the applicable pleading standards. LeadingResponse's motion to dismiss should be denied in its entirety.

# II. ISSUES PRESENTED

1. Whether Plaintiff has stated a claim under Section 12(a)(1) of the Securities Act by alleging that LeadingResponse actively solicited investments in an offering that was legally disqualified under Rule 506(d) due to Daniel Miller's prior regulatory bar.
2. Whether Plaintiff has adequately pled a claim under Rule 10b-5 of the Exchange Act by alleging that LeadingResponse participated in the dissemination of materially misleading

offering materials and omitted to disclose disqualifying facts essential to investor decision-making.

3. Whether Plaintiff has sufficiently alleged causation and standing, where LeadingResponse was paid with Plaintiff's investment funds, directly interacted with Plaintiff, and materially participated in the marketing of the unlawful offering.
4. Whether the First Amended Complaint states a valid claim for unjust enrichment by alleging that LeadingResponse accepted and retained funds from Plaintiff that were used to execute a promotional campaign that provided no benefit and was rooted in illegality.
5. Whether LeadingResponse's failure to dispute the illegality of the offering, the Rule 506(d) disqualification, or the omission of Daniel Miller's regulatory bar should be treated as a concession of those core facts for purposes of this motion.
6. Whether Plaintiff has stated a claim under Section 12(a)(1) of the Securities Act by alleging that LeadingResponse actively solicited investments in an offering rendered ineligible under Rule 506(d) due to the fund principal's prior regulatory bar.
7. Whether Plaintiff has properly alleged a claim under Rule 10b-5, based on LeadingResponse's role in disseminating misleading materials and concealing material facts concerning the legal ineligibility of the offering.
8. Whether Plaintiff has alleged a valid claim for unjust enrichment, given that LeadingResponse received payment from Plaintiff's remaining capital to conduct a promotional campaign that failed and yielded no benefit to Plaintiff.

9. Whether Plaintiff has adequately alleged causation and standing, where Plaintiff was directly introduced to LeadingResponse's consultant, his funds were used to pay for LeadingResponse's services, and he was denied promised access to event outcomes.
10. Whether the contemporaneous emails contradict LeadingResponse's assertion that it had no direct connection with Plaintiff and therefore no liability under the federal securities laws.
11. Whether, if any pleading deficiency is found, Plaintiff should be granted leave to amend pursuant to Rule 15(a)(2), especially where the evidentiary record is already developed.

# III. STATEMENT OF FACTS

Plaintiff David Burlingame invested a total of $1.6 million in what was represented to him as a sophisticated private investment opportunity promoted and managed by Daniel Miller and Ryan Nelson through affiliated entities including Argo Private Client Group, Ltd. and Aurora Hill, Ltd. The investment was structured as a private offering purportedly exempt from registration under Regulation D of the Securities Act of 1933. Plaintiff was assured that the offering was fully compliant with federal securities law and that the underlying investment strategy had historically produced high, uncorrelated returns. The investment was presented as a low-risk, high-return vehicle managed by seasoned professionals.

Plaintiff's first wire transfer of $100,000 occurred on June 1, 2021. His second, in the amount of $1.5 million, was made on January 5, 2022. Both investments were solicited and accepted during a period when Daniel Miller was under a permanent bar issued by the National Futures Association

("NFA") in March 2021. That bar rendered Miller a disqualified party under SEC Rule 506(d), thereby disqualifying the offering from exemption under Regulation D. The existence of this disqualifying event was never disclosed to Plaintiff.

No registration statement was filed with the SEC in connection with the offering, and no effort was made to bring the fund into compliance with applicable exemptions following Miller's bar. Instead, Miller and Nelson falsely held out the offering as fully exempt and failed to disclose Miller's regulatory history in any marketing or offering materials. These omissions rendered the offering both legally defective and materially misleading.

Within months of Plaintiff's second investment, the vast majority of his capital had been lost. Plaintiff repeatedly requested performance statements, brokerage account data, and an explanation of trading results. No such documentation was ever provided. Instead, Plaintiff received only general references to market volatility and explanations that failed to account for the scale of the losses. During this period, Plaintiff began to question the legitimacy of the investment and sought greater visibility into how his funds had been used.

In or around May 2022, with most of Plaintiff's investment depleted, Miller and Nelson approached Plaintiff with a plan to recoup losses by financing a national seminar campaign aimed at attracting new investors to the same fund. Plaintiff was told that by underwriting the promotional campaign, he would benefit from future inflows and have transparency into campaign metrics and fundraising outcomes. Based on those representations, Plaintiff reluctantly agreed to permit the use of approximately $150,000 in remaining funds for this effort.

Plaintiff was introduced via email to Derek Scarborough, a representative of Defendant LeadingResponse, who was described by Nelson as the consultant who would manage all aspects of the campaign. Scarborough was employed by or affiliated with LeadingResponse and was tasked with designing the investor presentations, targeting attendees, tracking RSVPs, and reporting back to Plaintiff. As evidenced by the May 2022 communications submitted as Exhibit A, Plaintiff was copied on and directly included in these emails, which confirm that Scarborough understood Plaintiff's role and the source of the funding.

LeadingResponse proceeded to organize and implement a series of investment seminars in multiple U.S. cities, including Naples, Houston, and Cary. These events were presented as compliant investment presentations but continued to rely on offering materials that made no mention of Miller's regulatory bar or the disqualified status of the fund under Rule 506(d). Plaintiff's funds were used to cover all associated costs, including event production, advertising, consultant fees, and venue expenses.

Plaintiff was assured that he would be granted access to LeadingResponse's ProspectConnect platform to monitor attendance, follow-up activity, and capital raised. Despite repeated requests, Scarborough failed to provide Plaintiff with access. As reflected in the communications attached as Exhibit B, Scarborough repeatedly delayed and eventually ceased responding to Plaintiff's inquiries. No report of investor activity or capital raised was ever produced. Plaintiff never received an accounting for the $150,000 used to fund the campaign and was given no indication that any new investors entered the fund.

LeadingResponse retained the full value of the fees it received, never disclosed the disqualified nature of the offering it helped promote, and has never returned or accounted for Plaintiff's funds. At no time did LeadingResponse inquire whether the offering it was supporting was compliant with federal securities law. It failed to perform any due diligence regarding the offering's eligibility or the regulatory status of the fund's principal. It continued to disseminate misleading information and participated in a campaign that was, in substance, the public solicitation of a disqualified private offering.

In the face of these allegations, LeadingResponse's motion to dismiss does not dispute the central factual predicate of the complaint: that Daniel Miller was permanently barred by the NFA in March 2021; that the offering was therefore disqualified under Rule 506(d); or that the omission of that fact rendered the marketing materials misleading. Instead, LeadingResponse focuses solely on denying its relationship to Plaintiff and portraying itself as a passive vendor. The email record contradicts that portrayal and establishes both direct contact with Plaintiff and material participation in a deceptive campaign financed with Plaintiff's funds.

# IV. LEGAL STANDARD

### A. Motion to Dismiss Under Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint must provide more than a "formulaic recitation of the elements of a cause of action," but need not provide detailed factual allegations or prove its case at the pleading stage. Id.

On a motion to dismiss, courts must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. A claim is facially plausible when the facts alleged permit the court to infer that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678.

### B. Heightened Pleading Under Rule 9(b)

Where a complaint alleges fraud, Rule 9(b) of the Federal Rules of Civil Procedure requires that "the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). This requires a plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000).

The Second Circuit has made clear, however, that Rule 9(b) does not require evidentiary detail or proof at the motion to dismiss stage. Circumstantial facts supporting a strong inference of fraudulent intent will suffice. Id. Furthermore, when the alleged fraud involves omissions, the Rule 9(b) standard is relaxed, and a plaintiff must only plead the material misrepresentation, the basis for its materiality, and the defendant's knowledge or reckless disregard. *SEC v. Zandford*, 535 U.S. 813 (2002).

# V. ARGUMENT

## A. Plaintiff Has Stated a Claim Under Section 12(a)(1) of the Securities Act

Section 12(a)(1) of the Securities Act of 1933 imposes strict liability on any person who "offers or sells a security in violation of section 5." 15 U.S.C. § 77l(a)(1). A plaintiff need not prove scienter, intent, or reliance. The statute provides a cause of action for rescission or damages against any person who sold, or solicited the sale of, a security that was neither registered nor exempt from registration. See *Pinter v. Dahl*, 486 U.S. 622, 641–47 (1988).

To state a claim under Section 12(a)(1), a plaintiff must allege: (1) that the defendant offered or sold a security, (2) that the offering was not registered and not exempt, and (3) that the plaintiff purchased the security. Id. These elements are plainly met in the First Amended Complaint.

Plaintiff alleges that he invested in a pooled investment vehicle structured and marketed as a Regulation D offering. The offering was not registered with the SEC. While it was represented to be exempt under Rule 506 of Regulation D, that exemption was rendered unavailable due to a disqualifying event under Rule 506(d): specifically, the permanent bar issued against Daniel Miller by the National Futures Association in March 2021. That disqualification was never disclosed to Plaintiff. Because Miller was a covered person and promoter of the offering, and the bar occurred prior to Plaintiff's investments, the offering was categorically ineligible for the Regulation D exemption. See 17 C.F.R. § 230.506(d).

LeadingResponse does not contest any of these foundational facts. It does not dispute that the offering was unregistered. It does not deny that Miller was barred. It does not challenge the

applicability of Rule 506(d). Nor does it dispute that the offering materials omitted this critical disqualifying information. Its motion is silent as to the legal effect of the disqualification, and offers no justification for the offering's failure to comply with federal law. For purposes of this motion, those facts must be deemed admitted.

Instead, LeadingResponse attempts to shield itself by claiming it did not "offer or sell" the security within the meaning of Section 12. But that argument fails under *Pinter v. Dahl*, *Pinter v. Dahl*, 486 U.S. 622 (1988), which extends Section 12 liability to any person who solicits the purchase of a security for their own financial interest. 486 U.S. at 647. Solicitation includes not only personal appeals to purchase, but also participation in promotional efforts and marketing campaigns, particularly when those efforts are compensated.

Here, the First Amended Complaint and accompanying exhibits allege—and document—that LeadingResponse was retained to design, market, and execute a national seminar campaign aimed at attracting investors to the offering. These seminars were structured around a script developed in coordination with Miller and Nelson. Plaintiff's own investment funds were used to finance the campaign. LeadingResponse's consultant, Derek Scarborough, was introduced directly to Plaintiff, and communicated with him regarding campaign logistics and access to post-event investor data. Scarborough assured Plaintiff that he would receive tracking information via ProspectConnect. These efforts were part of a larger strategy to solicit further investment in the offering and qualify future inflows.

That is more than sufficient to satisfy the standard for "solicitation" under Section 12(a)(1). Courts

have consistently held that marketing agents, consultants, and intermediaries who participate in the preparation or dissemination of offering materials, or who otherwise engage in activities designed to promote the sale of securities, may be held liable under Section 12. See, e.g., *SEC v. Brown*, 740 F. Supp. 2d 148, 171–72 (D.D.C. 2010) (finding liability where non-issuer defendants promoted unregistered offering through seminars and communications with investors).

LeadingResponse's effort to recast itself as a mere vendor ignores its role in orchestrating the seminars, communicating directly with Plaintiff, and accepting funds derived from Plaintiff's investment to perform these services. That conduct places it squarely within the scope of Section 12(a)(1). The motion to dismiss this claim should be denied.

## B. Plaintiff Has Stated a Claim Under SEC Rule 10b-5

Rule 10b-5, promulgated under Section 10(b) of the Securities Exchange Act of 1934, makes it unlawful for any person, in connection with the purchase or sale of a security, (a) to employ any device, scheme, or artifice to defraud; (b) to make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in light of the circumstances, not misleading; or (c) to engage in any act, practice, or course of business which operates as a fraud or deceit. See 17 C.F.R. § 240.10b-5.

To plead a claim under Rule 10b-5, a plaintiff must allege: (1) a material misrepresentation or omission, (2) made with scienter, (3) in connection with the purchase or sale of a security, (4) upon which the plaintiff relied, and (5) that proximately caused plaintiff's damages. *Basic Inc. v.*

*Levinson*, 485 U.S. 224, 231–32 (1988); *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000) Plaintiff has adequately pled each of these elements with specificity. The First Amended Complaint alleges that Defendant LeadingResponse played a material role in promoting a securities offering that was facially disqualified from exemption under federal securities law. The marketing campaign designed and executed by LeadingResponse omitted any reference to Daniel Miller's permanent bar by the National Futures Association, and thereby concealed the legal ineligibility of the offering under Rule 506(d) of Regulation D. These omissions were not minor or collateral. They went to the core legality of the offering and its eligibility for exemption from registration.

Further, LeadingResponse made implied representations through its participation in the promotion of the offering—specifically, that the offering complied with securities laws and that the materials presented to investors were complete and accurate. These representations were materially false or misleading by omission. By facilitating and endorsing a seminar campaign that failed to disclose material regulatory disqualifications, LeadingResponse engaged in conduct that operated as a fraud and materially misled Plaintiff and other prospective investors.

The element of scienter is satisfied where a defendant acts with intent to deceive or with reckless disregard for the truth. *Novak*, 216 F.3d at 308. Here, LeadingResponse was paid directly from Plaintiff's investment funds, knew it was promoting a securities offering, and failed to conduct even minimal due diligence as to the eligibility or legal status of the offering. Its failure to inquire about regulatory bars or verify the legal accuracy of the materials used at its seminars, while accepting payment for its role in soliciting investors, satisfies the standard for at least recklessness

under Rule 10b-5.

The element of reliance is satisfied by Plaintiff's continued support and underwriting of the seminar campaign, made in reliance on the integrity and transparency of the offering. Plaintiff was assured that the campaign would comply with legal standards, and that he would receive tracking data and visibility into results. His capital was used in furtherance of an unlawful offering, and he was misled about the legitimacy of both the campaign and the underlying investment. That reliance was reasonable under the circumstances.

Causation is established where the plaintiff's injury is the foreseeable consequence of the defendant's fraudulent conduct. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658 (2008). Here, Plaintiff's remaining capital was expended in a seminar campaign that promoted an unlawful and misleading offering. LeadingResponse's conduct contributed directly to the dissipation of those funds and to Plaintiff's inability to recover his losses.

Finally, LeadingResponse's motion to dismiss is entirely silent on the disqualifying bar against Miller and the ineligibility of the offering under Rule 506(d). It does not address the omission, the materiality of that omission, or the duty to disclose it. This silence further supports the inference that the omission is both undisputed and material.

Taken together, these allegations support a well-pled claim under Rule 10b-5. The motion to dismiss this cause of action should be denied.

### C. Plaintiff Has Adequately Alleged Causation and Standing

Defendant LeadingResponse argues that Plaintiff lacks standing and has failed to plead causation, contending that Plaintiff had no direct relationship with LeadingResponse and did not purchase any product or service from it. This argument ignores both the facts alleged and the controlling law. Plaintiff's claims arise not from a consumer transaction, but from the diversion of his investment funds into a marketing scheme designed, executed, and profited from by LeadingResponse. The funds at issue were traceable to Plaintiff, the injury was concrete and direct, and the connection to LeadingResponse is both well-pled and documented.

Article III standing requires (1) an injury in fact that is concrete and particularized; (2) a causal connection between the injury and the conduct complained of; and (3) that the injury is likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). In the securities context, courts have also applied standing requirements to ensure that plaintiffs have a direct stake in the securities purchased or sold and in the misrepresentations or omissions alleged. *Reese v. Triborough Bridge & Tunnel Auth.*, 91 F.4th 582, 589–90 (2d Cir. 2024).

Here, Plaintiff has alleged a direct and personalized economic injury: approximately $150,000 of his investment capital was used—without proper disclosure, documentation, or return—to finance a seminar campaign operated by LeadingResponse. That injury is concrete, monetary, and particularized. It is not speculative or derivative of any other harm.

Plaintiff has also alleged a clear causal link between LeadingResponse's conduct and the harm suffered. The First Amended Complaint, supported by emails and documentation, shows that:

- Plaintiff was introduced directly to LeadingResponse's consultant, Derek Scarborough;
- Scarborough communicated with Plaintiff about the campaign;
- The seminars were marketed as part of an effort to recover Plaintiff's prior losses;
- Plaintiff's funds paid for the campaign; and
- The campaign ultimately failed, leaving Plaintiff with no return and no accountability for the expenditure.

The injury was thus not merely foreseeable—it was the inevitable result of LeadingResponse's promotion of a legally defective offering and its failure to disclose material disqualifications or provide promised transparency. This is more than sufficient to meet both Article III standing and the proximate cause standard under Section 12 and Rule 10b-5.

Moreover, where a defendant receives a financial benefit directly traceable to the plaintiff's funds and those funds are expended in furtherance of an illegal or deceptive scheme, courts have recognized standing to bring both statutory and equitable claims. See *SEC v. Zandford*, 535 U.S. 813, 819–21 (2002) (securities fraud); *In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472, 503–04 (S.D.N.Y. 2005) (secondary actors may be held liable where their actions materially furthered a fraudulent scheme).

LeadingResponse's role in executing the seminar campaign was not incidental. It designed, administered, and profited from the promotional effort. Its failure to screen the offering or disclose that it was legally ineligible for exemption under Rule 506(d) was central to Plaintiff's injury. The causal nexus is well-pled, and any challenge to standing or causation must be rejected at this stage.

### D. Plaintiff Has Properly Alleged a Claim for Unjust Enrichment

In addition to his statutory securities claims, Plaintiff asserts a common law claim for unjust enrichment against Defendant LeadingResponse. Under New York law, a plaintiff must allege: (1) that the defendant was enriched, (2) at the plaintiff's expense, and (3) that it would be against equity and good conscience to permit the defendant to retain the benefit. See *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516 (2012); *Cruz v. McAneney*, 31 A.D.3d 54, 59 (2d Dep't 2006). All three elements are met here.

First, Plaintiff alleges that LeadingResponse received payment in the amount of approximately $150,000. That payment came directly from funds Plaintiff had invested in the offering promoted by Daniel Miller and Ryan Nelson. The use of those funds to pay LeadingResponse was not incidental or collateral—it was central to the execution of the seminar campaign. Plaintiff's investment capital was the source of LeadingResponse's compensation.

Second, the enrichment was clearly at Plaintiff's expense. Plaintiff was induced to allow his remaining capital to be used for a campaign that was represented to be compliant, effective, and transparent. He was assured that he would receive access to data and insight into investor conversions. In fact, Plaintiff received none of the promised deliverables. LeadingResponse did not provide post-event reporting, failed to grant access to its ProspectConnect system, and ceased communications after receiving payment.

Third, it would be inequitable and unconscionable to permit LeadingResponse to retain the funds it received under these circumstances. It participated in the promotion of a legally disqualified

offering, failed to perform due diligence regarding regulatory compliance, and accepted payment for services that failed to deliver even minimal transparency. The offering itself was materially misleading, and the seminars it helped organize perpetuated that deception by omitting disqualifying information about Daniel Miller's bar and the fund's ineligibility under Rule 506(d).

Courts have consistently recognized that unjust enrichment claims may proceed in parallel with securities fraud claims where a defendant benefits from its role in a deceptive offering. See *Midlantic Nat'l Bank v. Havens*, 1994 WL 760822, at *4 (S.D.N.Y. Dec. 27, 1994) (unjust enrichment available where party received funds procured by fraud); *In re Refco Inc. Sec. Litig.*, 826 F. Supp. 2d 478, 512 (S.D.N.Y. 2011) (finding unjust enrichment adequately pled where defendant received compensation for facilitating unlawful transactions).

LeadingResponse's attempt to characterize itself as a disinterested vendor fails in light of the facts pled and the documents submitted. The benefit it received was direct, the loss suffered by Plaintiff was concrete, and the conduct surrounding the transaction was tainted by deception and omission. Plaintiff's unjust enrichment claim is well-supported and must proceed.

## E. The Contemporaneous Email Record Contradicts Defendant's Assertions

In its motion to dismiss, LeadingResponse attempts to distance itself from Plaintiff by arguing that there was no direct relationship between the two, and that the complaint fails to allege any actionable conduct on its part. These assertions are contradicted by the contemporaneous documentary record—specifically, emails in which Plaintiff was introduced to and communicated directly with LeadingResponse's consultant, Derek Scarborough. These communications

demonstrate that LeadingResponse had actual knowledge of Plaintiff's identity, understood that his funds were being used to finance the seminar campaign, and actively engaged in planning and execution of the offering's marketing.

As detailed in Exhibits A and B to the accompanying Affirmation, Plaintiff was formally introduced to Scarborough by Ryan Nelson in May 2022. The introductory email included Scarborough's contact information and expressly identified him as the individual who would "take over the campaign." Scarborough then responded to Plaintiff directly, confirming his role and outlining the steps LeadingResponse would take to implement the seminar initiative. He referred to the ProspectConnect system, acknowledged the campaign's objectives, and coordinated event details—all in direct communication with Plaintiff.

These communications are not incidental or peripheral. They go directly to the core of LeadingResponse's attempt to portray itself as a passive third-party vendor with no connection to Plaintiff or the offering. The email record establishes the opposite. Plaintiff was not only aware of LeadingResponse's role—he was actively working with its consultant, providing logistical input, and requesting performance metrics throughout the campaign.

Moreover, the email record confirms that LeadingResponse failed to provide the transparency it promised. Plaintiff repeatedly asked Scarborough for access to the ProspectConnect platform, which had been described as a tool for tracking investor response and campaign effectiveness. Scarborough made assurances but never delivered access. No performance data was ever produced. This failure to follow through further supports the inference that LeadingResponse was

not merely passive, but affirmatively misrepresented what it would deliver in exchange for Plaintiff's funds.

Significantly, LeadingResponse does not contest the authenticity of these communications. Nor does it deny that Plaintiff's capital was used to pay for its services. It offers no explanation for its failure to provide promised reporting or transparency. Its silence on these issues—combined with the documentary record—undermines the credibility of its defense and reinforces the plausibility of Plaintiff's claims.

On a Rule 12(b)(6) motion, the Court must accept as true all well-pled allegations and may consider documents incorporated by reference or integral to the complaint. The email exhibits fall squarely within that category. They corroborate Plaintiff's allegations, contradict Defendant's characterization of its role, and independently support the denial of the motion to dismiss.

## F. Defendant's Lack of Privity Defense Is Legally Irrelevant

Defendant LeadingResponse's motion relies heavily on the argument that it owed no duty to Plaintiff because there was no direct contractual relationship or privity between the parties. This argument fails for two reasons: first, privity is not a required element of the claims asserted here; and second, Plaintiff has alleged—and substantiated—conduct by LeadingResponse that goes well beyond a mere third-party vendor role, including direct interaction and receipt of funds traceable to Plaintiff's investment.

The federal securities laws do not require privity between the plaintiff and defendant. Under *Pinter v. Dahl*, 486 U.S. 622 (1988), liability under Section 12(a)(1) extends to any person who "solicits"

the purchase of a security, so long as that person does so for financial gain. Solicitation includes more than face-to-face sales; it encompasses promotional activity, distribution of offering materials, and other conduct designed to induce a securities transaction. See id. at 647–48.

Here, Plaintiff has pled that LeadingResponse was retained to develop and implement a nationwide seminar campaign designed to attract investors to an offering of securities. Plaintiff's funds were used to pay for the campaign. LeadingResponse's consultant communicated directly with Plaintiff. These facts support the reasonable inference that LeadingResponse solicited investment in the offering and did so for compensation. No formal privity or contract between Plaintiff and LeadingResponse is required to support Section 12(a)(1) liability.

Likewise, under Rule 10b-5, courts have routinely held that privity is not required where a defendant participates in a fraudulent scheme or contributes materially to the dissemination of misleading statements or omissions. See *SEC v. Zandford*, 535 U.S. 813, 819 (2002); *In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472, 504 (S.D.N.Y. 2005). What matters is the defendant's conduct and its nexus to the securities transaction, not whether the defendant and plaintiff were parties to a formal agreement.

The unjust enrichment claim similarly does not depend on privity. As New York courts have long recognized, a party who receives a benefit traceable to funds provided by the plaintiff—particularly where that benefit is obtained through deception or omission—may be held liable even in the absence of a direct contractual relationship. See *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516–17 (2012).

Courts have rejected attempts by secondary actors to evade liability merely by pointing to a lack of direct contractual privity with the plaintiff. In *In re Parmalat Securities Litigation*, the Southern District of New York explained that "privity is not required to hold a party liable for its role in a fraudulent scheme, especially where the defendant participated in the dissemination of misleading statements or omissions." 376 F. Supp. 2d at 504. Similarly, in *SEC v. U.S. Environmental, Inc.*, the court held that "those who act in furtherance of the scheme, whether or not in direct contact with investors, may be held liable under Rule 10b-5." 155 F.3d 107, 112–13 (2d Cir. 1998). And in *Pinter v. Dahl*, *Pinter v. Dahl*, 486 U.S. 622 (1988), the Supreme Court emphasized that Section 12(a)(1) liability extends to "any person who solicits the purchase [of a security] for his own financial gain," whether or not the plaintiff and defendant are in privity. 486 U.S. at 647.

LeadingResponse's role in executing the seminar campaign was not incidental. It designed, administered, and profited from the promotional effort. Its failure to screen the offering or disclose that it was legally ineligible for exemption under Rule 506(d) was central to Plaintiff's injury. The causal nexus is well-pled, and any challenge to standing or causation must be rejected at this stage. LeadingResponse's direct involvement in the solicitation campaign, combined with its financial benefit from Plaintiff's investment and its omission of critical disqualifying facts, are more than sufficient to support liability at the pleading stage—regardless of the absence of a formal contract.

Accordingly, the absence of contractual privity is irrelevant to the claims asserted, and Defendant's argument on this point provides no basis for dismissal.

# VI. CONCLUSION

Defendant LeadingResponse's motion to dismiss should be denied in its entirety. Plaintiff has pled detailed, plausible claims for relief under Section 12(a)(1) of the Securities Act, Rule 10b-5 of the Exchange Act, and unjust enrichment under New York law. These claims are supported not only by specific factual allegations but by documentary evidence, including contemporaneous emails showing LeadingResponse's direct engagement with Plaintiff, receipt of Plaintiff's investment funds, and failure to provide promised disclosures or access to campaign performance data.

Most notably, LeadingResponse does not dispute—and therefore concedes for purposes of this motion—that the offering it promoted was disqualified under Rule 506(d), that it omitted to disclose this disqualification to investors, and that Daniel Miller was permanently barred by the National Futures Association prior to the offering. These omissions strike at the heart of federal securities law. Defendant's silence on these issues underscores the sufficiency of Plaintiff's pleading and the gravity of the misconduct alleged.

To the extent Defendant now seeks to avoid liability based on a lack of contractual privity or an assertion that it was merely a service provider, the law is clear: no such privity is required under Section 12(a)(1), Rule 10b-5, or for unjust enrichment. Liability attaches to conduct, not labels. LeadingResponse's actions—including its paid role in promoting an illegal offering, its

communication with Plaintiff, and its retention of funds obtained through fraud—are sufficient to state a claim under each cause of action.

For the foregoing reasons, Plaintiff respectfully requests that the Court deny LeadingResponse's motion to dismiss in its entirety.

July 28, 2025
Glen Cove, New York

Respectfully Submitted,
*s.*/Kevin Phillip Krupnick, Esq.
*Attorney for Plaintiff*
David Burlingame