UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------------X
DAVID BURLINGAME,

Plaintiff,

-against- Case No. 1:25-cv-01704

ARGO PRIVATE CLIENT GROUP, LTD.,
AURORA HILL, LTD., DANIEL MILLER, RYAN NELSON,
DEREK SCARBOROUGH, LEADING RESPONSE, LLC,
BEACHWOOD INVESTORS GROUP, LLC,
SUEDE NIGHTS, LLC,

Defendants.

~and~

ALLISON R. MILLER

Relief Defendant,

---------------------------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

**The Krupnick Firm**
**56 Hammond Road**
**Glen Cove, New York 11542**

TABLE OF CONTENTS

I. PRELIMINARY STATEMENT……………………………………………..…….1

II. ISSUES PRESENTED…………………………………………………..……3

III. STATEMENT OF FACTS………………………………………………..…..4

IV. LEGAL STANDARD……………………………………….……………..….7

V. ARGUMENT

A. Defendants' Procedural Objections Are Meritless………………….….…….9

B. Plaintiff Has Stated a Claim for Fraud……………………………...……..11

C. The Suspicious Asset Transfer Further Supports Plaintiff's Claims and Warrants Discovery…………………………………………………………………..14

D. Defendants violated the Investment Advisers Act of 1940…………….…...16

E. Defendants' Own Admissions and Omissions Reinforce the Sufficiency of Plaintiff's Claims…………………………………………………….....17

F. Plaintiff Has Adequately Alleged Federal Securities Law Violations…..….19

G. Plaintiff Has Also Stated Claims for Common Law Fraud and Breach of Fiduciary Duty……………………………………………..21

H. Plaintiff Is Entitled to Equitable Relief in the Form of Unjust Enrichment and Constructive Trust…………………………………....22

VI. CONCLUSION……………………………………………………………23

Cases

Ashcroft v. Iqbal,556 U.S. 662 (2009) ....................................................................................7

ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007)……………………..7

Bell Atl. Corp. v. Twombly,550 U.S. 544 (2007) ...............................................................7

Chambers v. Time Warner, Inc., 282 F.3d 147 (2d Cir. 2002)..............................................7,8

DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 113 (2d Cir. 2010)……………………………8

Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co., 375 F.3d 168, 187 (2d Cir. 2004)…...9

Ganino v. Citizens Utils. Co., 228 F.3d 154, 162 (2d Cir. 2000)…………………………………8

Hamilton v. Atlas Turner, Inc., 197 F.3d 58, 61 (2d Cir. 1999)…………………………………10

In re Parmalat Sec. Litig., 376 F. Supp. 2d 472 (S.D.N.Y. 2005) .........................................7,8

Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006)……………………………………7

Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,
797 F.3d 160, 171–72 (2d Cir. 2015)…………………………………………………..……9

Novak v. Kasaks, 216 F.3d 300 (2d Cir. 2000) ..................................................................... 9

Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000)………………………………………….…..8

SEC v. Zandford, 535 U.S. 813 (2002) ............................................................................. 23

In re Vivendi Universal, S.A. Sec. Litig., 838 F.3d 223, 250 (2d Cir. 2016)……………………..8

**Statutes and Rules**

15 U.S.C. § 77l(a)(1)
15 U.S.C. § 77b(a)(1)
15 U.S.C. § 78j(b)
17 C.F.R. § 230.506(d)
17 C.F.R. § 240.10b-5
28 U.S.C. § 1331

Fed. R. Civ. P. 8(a)
Fed. R. Civ. P. 9(b)

Fed. R. Civ. P. 12(b)(5)
Fed. R. Civ. P. 12(b)(6) .

Section 202(a)(11) of The Investment Advisors Act of 1940

Section 10(b) of the Securities Exchange Act of 1934

# I. PRELIMINARY STATEMENT

Defendants' motion to dismiss ignores the extensive, well-pled allegations and documentary evidence showing a coordinated scheme of deception, misappropriation, and concealment. Plaintiff David Burlingame invested over $1.6 million in reliance on materials provided by Defendants, including a Private Placement Memorandum ("PPM"), a formal marketing presentation, and personal communications from Defendant Daniel Miller. These materials described a sophisticated, institutional-grade "fund-of-funds" structure with multiple independent advisors, layered risk controls, audited financials, and clear reporting obligations. In truth, none of this existed.

What Defendants sold was not a fund-of-funds at all. The investor presentation made no mention of external managers, audits, or institutional controls. Instead, it marketed a proprietary, in-house, algorithmic trading program designed and operated solely by Miller. The presentation promised daily returns using technical indicators, back-tested signals, and software "refined over 15 years." The structure described bore no resemblance to the multi-manager platform outlined in the PPM. Defendants now attempt to hide behind the PPM, but the misalignment between these documents—and between what was promised and what actually occurred—is central to Plaintiff's claims of fraud and misrepresentation.

After initial losses, Miller attempted to mollify Plaintiff with a side letter in which he personally promised that no further trades would be made without Plaintiff's consent, that he would oversee the account personally, and that efforts would be made to recover lost capital. These were false

assurances. No recovery ever occurred. No transparency was ever provided. And Miller continued to retain control of Plaintiff's investment without compliance with the stated risk procedures, reporting obligations, or structural integrity promised in the fund documents. Critically, Defendants also failed to disclose that Miller was subject to a regulatory bar that disqualified him from participating in securities offerings under Rule 506(d) of Regulation D. As a "bad actor," Miller's involvement rendered the offering ineligible for exemption, making the PPM invalid and the offering itself illegal under federal securities law. This omission alone is a material violation that undermines any safe harbor the Defendants seek in the fine print of their documents.

Now, to further frustrate Plaintiff's recovery efforts, Miller has engaged in what appears to be **a** fraudulent conveyance**.** Plaintiff has learned that Miller—now claiming to be divorced—transferred real property to his former spouse, and that home is now listed for sale. That asset may represent investor funds improperly withdrawn from the investment entity. Plaintiff reserves the right to seek equitable relief, including an injunction against that sale and the imposition of a constructive trust or sequestration of proceeds, pending the outcome of this action.

Incredibly, Defendants have also attempted to contest service of process despite the fact that Miller personally accepted service on behalf of himself and the affiliated entities, and sworn affidavits of service were filed with this Court. Defendants did not move to quash service or raise a timely objection under Rule 12(b)(5), and they have now appeared through counsel. These objections are not only meritless—they are a thinly veiled attempt to distract the Court from the serious allegations at the heart of this case.

Because Plaintiff has pled detailed, plausible, and well-supported claims sounding in fraud, misrepresentation, and fiduciary breach, the Court should deny the motion in its entirety. This is not a case that can be resolved on the pleadings. The discrepancies between the PPM, the presentation, the side letter, and the actual investment conduct are vast, material, and central to Plaintiff's right to recover. Dismissal at this stage would deny Plaintiff the opportunity to conduct discovery into the very facts that Defendants continue to conceal.

# II. ISSUES PRESENTED

1. Whether the Amended Complaint states plausible claims for fraud, misrepresentation, breach of fiduciary duty, and unjust enrichment where Plaintiff alleges that Defendants marketed a multi-manager, audited investment structure but in fact operated a single-strategy, unregulated, algorithmic trading program contrary to all fund documents and representations.
2. Whether dismissal is appropriate where the investment presentation, side letter, and personal assurances materially contradict the Private Placement Memorandum (PPM) and raise factual disputes that cannot be resolved without discovery.
3. Whether Defendants' failure to disclose that Daniel Miller was a "bad actor" under Rule 506(d) of Regulation D invalidates the offering exemption and supports Plaintiff's existing securities fraud and fiduciary breach claims.
4. Whether sworn affidavits of service and personal acceptance of process by Defendant Miller defeat Defendants' late-raised objections to service**,** especially where no Rule

12(b)(5) motion was timely filed.

5. Whether allegations that Defendant Miller transferred assets, including a home now listed for sale, to a relief defendant following investor losses justify the denial of dismissal and preservation of equitable remedies through discovery and injunctive relief.

# III. STATEMENT OF FACTS

In or around 2021, Plaintiff David Burlingame was solicited by Defendant Daniel Miller, acting through Argo Private Client Group, LLC, to invest in a private fund known as Aurora Hill Capital Management, LLC. At the outset of this solicitation, prior to receiving any formal offering documents, Plaintiff was provided with a marketing presentation authored by Miller and co-defendant Ryan Nelson. This presentation described what purported to be a proprietary, algorithmic, rules-based trading program that Miller had developed over the course of fifteen years. The presentation emphasized daily high-frequency trading activity using technical indicators and back-tested results. It projected consistent and repeatable trading profits based on automated execution and implied a proven track record of success. Critically, the presentation made no mention of third-party investment managers, independent auditors, or any of the institutional safeguards typically associated with a regulated pooled investment vehicle.

Relying on the presentation and oral representations made by Miller, Plaintiff expressed interest in investing. Only thereafter was Plaintiff provided with the Fund's Private Placement

Memorandum ("PPM"), which purported to describe an entirely different structure. According to the PPM, Aurora Hill was structured as a fund-of-funds that would allocate capital to various third-party investment managers. It claimed the Fund would retain independent investment advisers, engage a third-party auditor, issue periodic financial reports, and maintain structural diversification across multiple managers and strategies. These institutional assurances were materially inconsistent with what Plaintiff had previously been shown and told.

Despite the promises of oversight and diversification contained in the PPM, Plaintiff later learned that the Fund never operated in the manner described. No outside investment managers were retained. No auditor was engaged. No account statements or performance summaries were ever provided. All investment activity was conducted internally and unilaterally by Miller through the same algorithmic model described in the original presentation. The discrepancy between what was represented and what actually occurred was never disclosed to Plaintiff. Rather, Defendants induced Plaintiff to invest over $1.6 million—comprised of an initial $100,000 followed by an additional $1.5 million—on the basis of materials and assurances that bore no resemblance to the Fund's actual operations.

Further compounding the deception, Defendants failed to disclose that Miller had been previously barred by the National Futures Association (NFA), a fact that rendered him a "bad actor" disqualified from participating in exempt securities offerings under Rule 506(d) of Regulation D. This disqualification invalidated the Fund's reliance on the exemption claimed in the PPM and constituted a material omission under federal securities law. Plaintiff had no knowledge of this disqualification at the time of investment, and it was never disclosed in the PPM, the presentation,

or in any of Miller's personal communications with Plaintiff. When Plaintiff began questioning the unexplained decline in the value of his account, Miller responded by issuing a side letter. In this document, Miller promised that no further trades would be made without Plaintiff's consent, that he would personally oversee Plaintiff's account, that every effort would be made to recover lost funds, and that Plaintiff would be updated going forward. These representations, like those that preceded them, were knowingly false. No recovery efforts were undertaken, Plaintiff was not provided with any trading records or financial data, and Miller continued to act without transparency or accountability. The side letter was designed solely to buy time and suppress legal action.

Plaintiff has now discovered that Miller—who claims to be divorced—transferred a residence to his former spouse, who has been named as a Relief Defendant. That residence is currently listed for sale. Plaintiff believes that the property was acquired, improved, or maintained using misappropriated investor funds, and that the transfer was undertaken to frustrate Plaintiff's ability to recover on his claims. The pending sale of the property raises serious concerns about fraudulent conveyance and asset dissipation and underscores the need for immediate equitable relief to preserve the status quo pending adjudication of this action.

Finally, Defendants' claim that they were not properly served is demonstrably false. Defendant Miller personally accepted service of process for himself and the related entities. Sworn affidavits of service have been filed with this Court, and Defendants never moved to quash service under Rule 12(b)(5). They have since appeared through counsel and responded to the Amended Complaint. Accordingly, any objections to service have been waived, and the issue is a

manufactured distraction intended to divert attention from the merits of the case.

# IV. LEGAL STANDARD

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard does not require probability, but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. When reviewing such a motion, the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

Where claims involve allegations of fraud, Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard requiring that "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). However, "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Id. Courts in the Second Circuit interpret Rule 9(b) as requiring that the complaint: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006). But it is equally well-settled that fraud claims based on omissions or concealment are not subject to a rigid Rule 9(b) application. *See In re Parmalat Sec. Litig.*, 479 F.

Supp. 2d 332, 339 (S.D.N.Y. 2007) (holding that "where the fraud is based on an omission rather than a misrepresentation, Rule 9(b) requires that the complaint specify the omission, the person responsible for the failure to disclose, the context of the omission, and the manner in which the omission misled the plaintiff").

In determining the sufficiency of the pleading, the Court may consider the complaint, exhibits attached to it, documents incorporated by reference, and documents that are integral to the claims asserted. *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000). Courts may not weigh competing inferences or resolve factual disputes on a motion to dismiss. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010); *Chambers*, 282 F.3d at 152. "[W]hether a representation is misleading depends on the context, and often cannot be resolved as a matter of law." *In re Vivendi Universal, S.A. Sec. Litig.*, 838 F.3d 223, 250 (2d Cir. 2016).

Moreover, the issue of whether a misrepresentation or omission is material is usually a factual question inappropriate for resolution at the pleading stage. *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 162 (2d Cir. 2000) ("The determination of materiality is a mixed question of law and fact that the court is obliged to present to a jury unless the alleged misstatements or omissions are so obviously unimportant to a reasonable investor that reasonable minds could not differ.").

In a case involving fraudulent inducement, reliance, or breach of fiduciary duty, it is also inappropriate to resolve competing versions of events without discovery. Courts in this Circuit regularly deny motions to dismiss where the complaint alleges facts demonstrating that the plaintiff was misled through contradictory representations, concealed information, or a disparity between

what was promised and what actually occurred. *E.g., Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co.*, 375 F.3d 168, 187 (2d Cir. 2004); Novak v. Kasaks, 216 F.3d 300, 311 (2d Cir. 2000)*.

Finally, where a complaint identifies multiple documents with internally inconsistent representations (e.g., a presentation, a private placement memorandum, and a side letter), such contradictions themselves give rise to a plausible inference of fraud or misrepresentation and warrant discovery. See *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171–72 (2d Cir. 2015) (holding that Rule 9(b) is satisfied where the plaintiff sets forth inconsistent representations and identifies how the offering documents failed to disclose key facts).

If the Court finds any aspect of the complaint insufficient, leave to replead should be freely granted unless amendment would be futile or made in bad faith. *Id.* at 190. Here, however, the factual record is robust, supported by documentation, and more than sufficient to withstand dismissal under any standard.

# V. ARGUMENT

### A. Defendants' Procedural Objections Are Meritless

Defendants' assertion that they were not properly served is both legally and factually baseless. Defendant Daniel Miller was personally served on March 14, 2025, at 735 Wheatfield Drive, Aurora, Ohio 44202—a residence that public records confirm he resided in and over which he exercised control. The sworn affidavit of service, filed on the docket at ECF No. 4, confirms

direct personal delivery of the summons and complaint into Miller's hands at this address. Further, the same address was used for service on each of the entity defendants—Aurora Hill Ltd., Beachwood Investors Group, and Suede Nights, LLC—via Miller as the controlling member. These proofs of service are found at ECF Nos. 5 through 9.

In addition, the relief defendant Allison R. Miller was served via substituted service at the very same address. The affidavit of service, filed at ECF No. 9, states that delivery was left with Daniel Miller, who was described as a suitable person of age and discretion and who resided at the premises. Service was subsequently completed via mail. These acts of service are valid under Federal Rule of Civil Procedure 4(e)(2)(B), which permits service "at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there."

Miller's argument that service was defective or that jurisdiction is lacking is precluded by both law and fact. He accepted service personally at a residence he used and controlled. Moreover, he failed to raise any timely challenge to service under Rule 12(b)(5) and instead appeared through counsel. Participation without raising jurisdictional objections results in waiver. Having elexted not to raise objection to the sworn affidavits of service and object herein, in their original 12(b) (6) motion, they are estopped from doing so now. Courts in this Circuit have repeatedly held that parties who do not timely contest service and proceed to litigate on the merits cannot later raise such objections. See *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 61 (2d Cir. 1999). Further, this very property—735 Wheatfield Drive—was quitclaimed to Allison R. Miller in a transaction that postdates the investment and appears to have been effectuated after the initiation of legal proceedings. While Defendants now assert that Daniel Miller and Allison R. Miller are

divorced, this claim directly contradicts Miller's own conduct. If Daniel Miller no longer resided at the property due to a finalized divorce, it is inexplicable that he personally accepted service there—not only for himself, but also for the entity defendants and Allison R. Miller. These facts strongly suggest that the divorce, if finalized, may have been orchestrated to shield assets, and that Miller maintained beneficial control over the property despite the quitclaim deed.

This is not speculative. The record in this case—including the affidavits of service and the docket entries referenced above—demonstrates that Daniel Miller accepted personal service on behalf of all defendants. This is more than sufficient to establish proper service and to rebut any procedural objections. The circumstances also demand heightened scrutiny with respect to the legitimacy of the claimed divorce and asset transfers.

In short, the procedural defenses raised are not only unsupported—they are contradicted by the sworn evidence of service on file and by Defendants' own conduct. The Court should summarily reject them and proceed to the merits of the case.

## B. Plaintiff Has Stated a Claim for Fraud

Plaintiff's Amended Complaint, supported by multiple written documents and sworn exhibits, alleges a systematic and deliberate scheme of fraudulent inducement carried out by Defendant Daniel Miller and his affiliated entities. At every stage—from solicitation to investment to post-loss cover-up—Defendants made materially false representations and concealed critical facts in order to secure and retain Plaintiff's capital. This conduct meets and exceeds the pleading standards under Federal Rule of Civil Procedure 9(b) and Second Circuit precedent.

At the outset of their communications, Defendants provided Plaintiff with a sleek and professional marketing presentation promoting Aurora Hill's trading strategy. (See Exhibit J) That presentation described the Fund as operating through a proprietary, algorithmic, rules-based system refined over 15 years. It emphasized daily trade signals, automated execution, and high-frequency turnover, with no mention of discretionary human managers or third-party investment advisers. Plaintiff was told that all trading would be handled in-house using the firm's proprietary models—presented as a robust, independent system developed by Miller himself.

Only after Plaintiff expressed interest and began engagement with the Fund did Defendants provide him with a Private Placement Memorandum (PPM). Unlike the presentation—which described an internal algorithmic strategy managed solely by Defendants—the PPM portrayed a dramatically different model. While it did not expressly use the term "fund of funds," the PPM described a structure in which the General Partner would allocate capital to "one or more outside investment managers," maintain oversight, retain auditors, and provide investors with quarterly statements. These features implied a delegated and monitored investment process, with safeguards and third-party accountability.

In reality, the Fund did not engage any independent investment managers, no audit was ever performed, and no periodic reports were provided. All trading remained entirely within the control of Miller. Plaintiff was never informed that the Fund's structure bore no resemblance to either the presentation or the PPM. These inconsistencies go beyond negligence; they reflect a calculated effort to induce investment through deception and to create a false sense of oversight and transparency.

Additionally, Defendants failed to disclose that Daniel Miller had previously been barred by the National Futures Association (NFA), which rendered him ineligible to participate in unregistered securities offerings under Rule 506(d) of Regulation D. The PPM relied on Regulation D as the basis for its exemption from registration. The failure to disclose Miller's disqualification not only rendered the PPM materially misleading but also voided the legal basis for the offering's exemption. Courts have consistently held that failure to disclose a Rule 506(d) disqualification is a material omission under federal securities law.

When Plaintiff began raising questions about performance and transparency, Defendants provided a side letter that promised Plaintiff would be consulted before further trades, that efforts would be made to recoup losses, and that frequent updates would be issued. These promises were false. Plaintiff was not consulted. No evidence of trading or recovery efforts was ever shown. No updates were provided. The side letter was a stalling tactic meant to delay litigation and preserve the illusion of cooperation.

Defendants' own Motion to Dismiss concedes critical elements of Plaintiff's claims. They admit that losses occurred. They admit that no audit was ever produced. They admit the trading strategy changed or was always different, but Plaintiff was never informed. Although they dispute the characterization of these omissions as fraud, they do not contest that no auditor, investment advisor, or regular reporting was implemented, as required by the PPM. They do not attach any financial statements, audited reports, or even third-party brokerage confirmations to rebut Plaintiff's allegations. These omissions are tantamount to admissions, and they corroborate Plaintiff's description of the events.

Plaintiff justifiably relied on the presentation, the PPM, and the side letter. He had no way of knowing that the information provided was false, or that Miller was legally barred from managing investor capital. He had no access to trading records or internal documents. The representations made were not puffery or forward-looking projections; they were concrete statements of structure, legality, and oversight—none of which were true. The damage is direct and quantifiable: Plaintiff invested over $1.6 million and received no return, no accounting, and no explanation. The pleadings more than satisfy the elements of fraud: material misstatements and omissions, knowledge of falsity, intent to induce reliance, actual and justifiable reliance, and resulting damages.

These undisputed failures and omissions, many of which are effectively conceded in the Motion to Dismiss, remove any doubt that Plaintiff has pleaded a viable cause of action. This case must proceed to discovery.

### C. The Suspicious Asset Transfer Further Supports Plaintiff's Claims and Warrants Discovery

Although this opposition does not seek injunctive relief, the facts concerning Defendant Daniel Miller's transfer of real property to relief defendant Allison R. Miller are nevertheless highly relevant to the overall fraud and concealment alleged in the Amended Complaint and further support Plaintiff's entitlement to proceed to discovery.

After the loss of Plaintiff's investment—and around the time litigation was reasonably foreseeable—Daniel Miller executed a quitclaim deed transferring his residence at 735 Wheatfield

Drive, Aurora, Ohio, to Allison R. Miller. No explanation or documentation has been provided to justify the transfer or demonstrate that it was part of a lawful divorce proceeding. Defendants now assert that the Millers are divorced, yet they have failed to produce a divorce decree, a property settlement agreement, or any court filing supporting that claim.

Notably, Daniel Miller personally accepted service of process for himself, each of the entity defendants, and Allison R. Miller at the very same address, well after the purported transfer. His continued use and control of the property directly undermines the notion that the transfer was a bona fide conveyance pursuant to a finalized divorce. Rather, these circumstances suggest that the transfer may have been designed to obscure assets and frustrate enforcement efforts—particularly in light of Defendants' complete failure to account for Plaintiff's investment.

The timing and nature of the transfer, when combined with Defendants' broader lack of transparency—including the failure to produce audits, trading records, or financial statements—demonstrate a consistent pattern of concealment and bad faith. At a minimum, these facts warrant further investigation and confirm that dismissal at this stage would be premature. Plaintiff is entitled to obtain discovery into the nature and purpose of this transfer, the extent of Miller's ongoing control over the property, and whether any other asset dissipation has occurred.

In sum, while Plaintiff does not seek a temporary restraining order or injunction in this motion, the property transfer described above forms a critical part of the factual matrix and underscores why the Amended Complaint is legally sufficient and must be allowed to proceed.

### D. Defendants violated the Investment Advisers Act of 1940.

As specifically pled in the Amended Complaint, Daniel Miller exercised full discretionary control over Plaintiff's capital, actively managed securities positions, made representations about his investment strategy, and was compensated for managing the fund. He did all of this while unregistered, in direct violation of Section 203 of the Advisers Act, and without qualifying for any exemption. Miller's conduct satisfies the statutory definition of "investment adviser" under Section 202(a)(11) of the Act.

Critically, this was never disclosed to Plaintiff. The PPM failed to mention that Miller was unregistered, and omitted the fact that he was barred by the National Futures Association—a disqualification that not only disqualified him from acting as an adviser, but also rendered the use of Regulation D to offer securities unlawful under Rule 506(d).

These were not technical oversights—they were knowing omissions and material misstatements that go to the heart of the fund's legality. They violate Sections 206(1) and 206(2) of the Advisers Act, which prohibit fraudulent, deceptive, or manipulative practices by anyone acting as an investment adviser. The Amended Complaint alleges these violations with particularity and is supported by contemporaneous documents, including the marketing materials, the PPM, and the side letter.

These facts independently support Plaintiff's claims under federal securities law and further reinforce the core allegations of fraud, deception, and malfeasance. They eliminate any plausible

basis for dismissal and mandate that this case proceed to discovery.

**E. Defendants' Own Admissions and Omissions Reinforce the Sufficiency of Plaintiff's Claims**

Beyond the affirmative evidence pled in the Amended Complaint, Defendants' own Motion to Dismiss strengthens Plaintiff's case by failing to deny—or by implicitly admitting—numerous critical allegations. These omissions operate as practical concessions and further reinforce the sufficiency of the claims at this stage.

First, Defendants do not dispute that no audit was ever conducted, despite the PPM's explicit assurance that audited financial statements would be prepared and made available. The PPM also promised oversight by third-party professionals and regular financial reporting. Yet Defendants admit that no such practices were followed and offer no alternative explanation or mitigating facts.

Second, Defendants do not contest that Daniel Miller personally accepted service at 735 Wheatfield Drive—thereby contradicting their claim that he no longer resided there due to a divorce and that the property had been transferred to Allison R. Miller. These two positions cannot be reconciled, and Defendants offer no factual clarity. Their silence is telling.

Third, Defendants do not rebut Plaintiff's assertion that the investment presentation and the PPM described materially different strategies. Nor do they explain why, in practice, neither model was followed. They offer no evidence of any algorithmic trading system as described in the presentation and no evidence of delegation to outside investment managers as suggested in the

PPM. They also fail to produce a single brokerage statement or third-party record demonstrating what trading, if any, occurred.

Fourth, while Defendants deny the characterization of their conduct as fraudulent, they do not provide any documentation that contradicts Plaintiff's claims. There are no trade records, no capital account statements, no compliance reports, and no correspondence demonstrating adherence to the representations made. This complete absence of counterevidence—particularly given the specificity of Plaintiff's allegations—is, at this stage, equivalent to an admission that no such evidence exists.

Finally, Defendants do not deny that Daniel Miller was previously barred by the National Futures Association and fail to address how this disqualification rendered the PPM ineligible for the Regulation D exemption under Rule 506(d). The omission of this material fact from the PPM constitutes a serious securities law violation that Defendants attempt to dismiss without legal or factual rebuttal.

In sum, Defendants' Motion to Dismiss fails to meaningfully challenge the factual core of Plaintiff's allegations. Their failure to deny key points, to produce contradictory records, or to explain the inconsistencies identified throughout the Amended Complaint only strengthens Plaintiff's position. These failures further underscore that the matter cannot be resolved on a motion to dismiss and must proceed to discovery.

## F. Plaintiff Has Adequately Alleged Federal Securities Law Violations

The Amended Complaint also sets forth sufficient facts to support claims under the federal securities laws, including violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder. These provisions prohibit the use of any device, scheme, or artifice to defraud, as well as the making of any untrue statement of material fact or the omission of a material fact necessary to make the statements made not misleading, in connection with the purchase or sale of any security.

Here, Plaintiff has identified numerous materially false statements and omissions by Defendants in connection with the solicitation of his $1.6 million investment. These include, but are not limited to:

1. Misrepresenting the Fund's strategy as a proprietary, algorithmic trading system refined over 15 years, when in fact the strategy was either non-existent or materially different in practice;
2. Falsely representing that the Fund would utilize independent investment managers, retain auditors, and provide quarterly financial statements, when in fact none of these practices were ever implemented;
3. Failing to disclose that Defendant Daniel Miller was barred by the National Futures Association, which rendered him ineligible to rely on the Regulation D safe harbor exemption under Rule 506(d) for unregistered offerings;
4. Failing to disclose the transfer of real property to relief defendant Allison R. Miller after

the losses and shortly before the commencement of this action, suggesting an intent to shield assets from recovery.

Each of these representations and omissions was material to Plaintiff's investment decision and falls squarely within the prohibitions of Rule 10b-5. The misstatements were not forward-looking projections or general puffery. They were affirmative factual representations about the structure, legality, oversight, and transparency of the Fund—areas that courts consistently recognize as material for investors.

Moreover, the claim under Section 10(b) and Rule 10b-5 satisfies the heightened pleading requirements of Rule 9(b) and the Private Securities Litigation Reform Act (PSLRA). The Amended Complaint identifies the specific fraudulent statements, the documents in which they were made (including the presentation, the PPM, and the side letter), who made them (primarily Daniel Miller), and why they were false when made. It further alleges scienter by demonstrating that Miller was previously barred and therefore knew that the offering was ineligible for Regulation D exemption, yet proceeded to solicit funds while concealing that fact.

Plaintiff also alleges loss causation, as he invested $1.6 million based on these representations and received neither returns, transparency, nor accounting. The entirety of the investment was lost, and no trading history, asset summary, or recovery effort has ever been documented or disclosed. These allegations more than satisfy the federal pleading standards for securities fraud.

The violations of Rule 10b-5, the use of interstate wires to transmit fraudulent solicitations, and the concealment of Miller's disqualifying history all combine to present a classic case of securities fraud that must proceed to discovery.

## G. Plaintiff Has Also Stated Claims for Common Law Fraud and Breach of Fiduciary Duty

In addition to the federal securities violations, Plaintiff's Amended Complaint sets forth independently sufficient claims under common law for fraud and breach of fiduciary duty, each of which requires the denial of Defendants' motion to dismiss.

With respect to common law fraud, Plaintiff has adequately pled each required element: a misrepresentation or omission of material fact, falsity, knowledge of falsity, intent to induce reliance, justifiable reliance, and resulting damages. As detailed in the prior sections, Defendants misrepresented the nature of the Fund's trading strategy, its oversight structure, and Daniel Miller's regulatory history. These misstatements were contained in both the initial marketing presentation and the Private Placement Memorandum (PPM), and were further reinforced through a side letter intended to delay litigation and provide false assurance of compliance. Plaintiff relied on these misrepresentations when wiring over $1.6 million in investment capital. Defendants' failure to implement the promised strategy, retain outside managers, produce audited statements, or disclose the regulatory bar against Miller—all of which were within their sole knowledge and control—resulted in Plaintiff's complete loss of funds and satisfy the elements of actionable fraud.

The Amended Complaint also states a claim for breach of fiduciary duty. As General Partner of the Fund and managing principal of the affiliated entities, Daniel Miller owed fiduciary duties to Plaintiff, including duties of loyalty, good faith, and candor. These duties were both contractually defined in the PPM and implied by law under partnership and agency principles. Defendants breached these duties by failing to follow the governance mechanisms promised in the PPM, by concealing trading activity and losses, by refusing to provide accountings or reporting, and by transferring real property under suspicious circumstances while simultaneously disclaiming ongoing control. These breaches were not isolated mistakes; they reflect a pattern of concealment and misappropriation that deprived Plaintiff of transparency, oversight, and ultimately any recovery of his investment.

Accordingly, even if the Court were to conclude that the federal securities claims were insufficient, Plaintiff's common law claims would require that this case proceed to discovery. The facts pled meet the heightened pleading standard under Rule 9(b) and easily satisfy the Rule 8 threshold for fiduciary breach.

## H. Plaintiff Is Entitled to Equitable Relief in the Form of Unjust Enrichment and Constructive Trust

The Amended Complaint further supports claims under equitable doctrines, including unjust enrichment and constructive trust. These claims apply regardless of whether a formal contract is ultimately enforced and serve as an alternative basis for relief based on the facts alleged.

Plaintiff alleges that he conferred a substantial benefit upon Defendants by investing over $1.6

million in reliance on materially false representations. Defendants failed to provide the oversight, reporting, and trading methodology they promised and have produced no documentation to explain the complete loss of capital. Despite their nonperformance and misconduct, Defendants have retained the benefit of Plaintiff's investment and have offered no refund, accounting, or restitution. Equity prohibits a party from retaining a benefit that was procured through deception or that would be unjust to retain, and Plaintiff's claim for unjust enrichment is therefore viable and properly pled.

In addition, the quitclaim transfer of real property from Daniel Miller to relief defendant Allison R. Miller, following the investment losses and prior to or during the pendency of this litigation, supports the equitable imposition of a constructive trust. Plaintiff has alleged facts suggesting that the transfer was not a bona fide divorce-related disposition but rather an effort to shield assets from legal claims. Daniel Miller's acceptance of service at the transferred address, continued use of the property, and failure to explain the transaction all reinforce the plausibility of this theory. Should Plaintiff prevail, a constructive trust over any property traceable to the proceeds of the fraud would be appropriate to ensure restitution and prevent unjust enrichment.

Together, these equitable claims further demonstrate the breadth and depth of Plaintiff's allegations. They reinforce the legal sufficiency of the Amended Complaint and preclude dismissal at this stage.or reckless disregard. *SEC v. Zandford*, 535 U.S. 813 (2002).

## VI. CONCLUSION

For all the foregoing reasons, the Court should deny Defendants' Motion to Dismiss in its entirety. Plaintiff has more than adequately alleged multiple viable claims, including securities fraud under

Rule 10b-5, common law fraud, breach of fiduciary duty, unjust enrichment, and constructive trust. Each of these claims is supported by specific, detailed factual allegations, corroborated by documentary exhibits, and reinforced by Defendants' own omissions, inconsistencies, and practical admissions.

The motion relies heavily on conclusory denials and attempts to reframe factual disputes as matters of law, while ignoring the clear conflicts between the marketing materials, governing documents, and actual conduct. Defendants have not submitted any evidence to rebut the well-pled allegations, nor have they disputed the authenticity or content of the key exhibits. Their procedural objections are waived or meritless, and their factual narrative—if it is to be credited at all—must be tested through discovery, not resolved on the pleadings.

Plaintiff respectfully submits that the Court should deny the Motion to Dismiss and allow this matter to proceed so that the truth of Defendants' conduct may be properly adjudicated on the merits.

July 28 2025
Glen Cove, New York

Respectfully Submitted,
*s./*Kevin Phillip Krupnick, Esq.
*Attorney for Plaintiff*
David Burlingame