UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

DAVID BURLINGAME,

                Plaintiff,

vs.

ARGO PRIVATE CLIENT GROUP, LTD., AURORA HILL, LTD., DANIEL MILLER, RYAN NELSON, DEREK SCARBOROUGH, LEADINGRESPONSE, LLC, BEACHWOOD INVESTORS GROUP, LLC, SUEDE NIGHTS, LLC.

                Defendants.

-------------------------------------------------------------------X

Case No. 1:25-cv-01704
Hon. Jesse M. Furman

**DEFENDANT RME, LLC D/B/A LEADINGRESPONSE'S MEMORANDUM
OF LAW IN REPLY TO PLAINTIFF'S OPPOSITION**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

I. INTRODUCTION ........................................................................................................1

II. ARGUMENT ................................................................................................................1

    A. Factual Allegations Are Assumed True for a 12(b)(6) Motion ...............................1

    B. Plaintiff's New Factual Allegations Should Be Disregarded ..................................2

    C. Plaintiff Still Fails to Allege Causation or Standing.................................................4

    D. Plaintiff Fails to Plead a Section 12(a)(1) Claim Against LeadingResponse ..........7

    E. Plaintiff Fails to Plead a Rule 10b-5 Claim against LeadingResponse ...................9

    F. Plaintiff Fails to State an Unjust Enrichment Claim..............................................10

III. CONCLUSION...........................................................................................................11

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................................2

*Ashland Inc. v. Morgan Stanley & Co.*,
   652 F.3d 333 (2d Cir. 2011) ..................................................................................................10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..........................................................................................................2, 10

*Chevron Corp. v. Donziger*,
   833 F.3d 74 (2d Cir. 2016) ......................................................................................................5

*First Nationwide Bank v. Gelt Funding Corp.*,
   27 F.3d 763 (2d Cir. 1994) ......................................................................................................7

*Friedl v. City of New York*,
   210 F.3d 79 (2d Cir. 2000) ..................................................................................................2, 3

*In re Laser Arms Corp. Sec. Litig.*,
   794 F. Supp. 475 (S.D.N.Y. 1989), *aff'd*, 969 F.2d 15 (2d Cir. 1992) ....................................8

*In re Parmalat Sec. Litig.*
   376 F. Supp. 2d 472 (S.D.N.Y. 2005) .....................................................................................6

*In re Refco Inc. Sec. Litig.*,
   826 F. Supp. 2d 478 (S.D.N.Y. 2011) ...................................................................................10

*Kopec v. Coughlin*,
   922 F.2d 152 (2d Cir. 1991) ....................................................................................................4

*Lentell v. Merrill Lynch & Co.*,
   396 F.3d 161 (2d Cir. 2005) ................................................................................................6, 7

*Midlantic Nat'l Bank v. Havens*,
   1994 WL 760822 (S.D.N.Y. Dec. 27, 1994) .........................................................................10

*Pinter v. Dahl*,
   486 U.S. 622 (1988) ............................................................................................................8, 9

*Reese v. Triborough Bridge & Tunnel Auth.*,
   91 F.4th 582 (2d Cir. 2024) .....................................................................................................5

*SEC v. Zandford*,
    535 U.S. 813 (2002) ................................................................................................................6

**STATUTES**

15 U.S.C.A. § 77l(a)(1) ..................................................................................................................8

**OTHER AUTHORITIES**

Fed. R. Civ. P. 50 ...........................................................................................................................4

Fed. R. Civ. P. 56 ...........................................................................................................................3


*SEC v. Zandford*,
    535 U.S. 813 (2002) ................................................................................................................6

**STATUTES**

15 U.S.C.A. § 77l(a)(1) ..................................................................................................................8

**OTHER AUTHORITIES**

Fed. R. Civ. P. 50 ...........................................................................................................................4

Fed. R. Civ. P. 56 ...........................................................................................................................3

## I.   INTRODUCTION

Plaintiff's Amended Complaint fails to cure the same fatal deficiencies that plagued his original Complaint. There is no causal link between Plaintiff, LeadingResponse, and the alleged misconduct at issue in this litigation. And Plaintiff's second Opposition contains the same flaws as the first. Almost the entirety of Plaintiff's brief alleges and relies upon facts and exhibits not contained in the Amended Complaint. While none of these new facts or exhibits should be considered, their addition still does not change the legal inadequacy of Plaintiff's claims against LeadingResponse. Despite now asserting that LeadingResponse had some indirect role in a marketing campaign funded by Plaintiff's investment proceeds, Plaintiff still cannot establish any viable legal claim. At its core, the First Amended Complaint remains devoid of allegations showing that LeadingResponse (1) caused Plaintiff's alleged injury; (2) offered or sold a security to Plaintiff; or (3) made or omitted any actionable misrepresentation to Plaintiff. The seminar campaign LeadingResponse was allegedly involved in occurred after Plaintiff had already invested and lost the overwhelming majority of his $1.6 million.

No amount of retrospective adding and repackaging of facts not incorporated into the Amended Complaint can change the simple truth: LeadingResponse conducted its legitimate business at the instruction of its client. LeadingResponse did not sell securities. LeadingResponse did not mislead Plaintiff. And LeadingResponse certainly did not cause Plaintiff's losses. The Court should accordingly dismiss the First Amended Complaint with prejudice.

## II.   ARGUMENT

### A.   Factual Allegations Are Assumed True for a 12(b)(6) Motion

As a preliminary matter, Plaintiff's Opposition attempts to manufacture an issue out of LeadingResponse's supposed "failure" to dispute certain factual allegations in the Amended Complaint—namely, those concerning Daniel Miller's regulatory bar and alleged illegal securities

1

offerings. This argument is procedurally nonsensical. On a motion to dismiss under Rule 12(b)(6), all well-pleaded allegations in the complaint are assumed to be true for purposes of the motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It would be improper and premature for LeadingResponse to contest facts at this stage, where the sole question is whether Plaintiff has stated a legally cognizable claim. Plaintiff's insinuation that silence on factual allegations equates to concession or admission is legally incorrect and procedurally irrelevant.

Still, even assuming Plaintiff's allegations as true, particularly as they relate to Daniel Miller being "barred by the National Futures Association" and Mr. Miller making an unregistered offering, there is no plausible connection to LeadingResponse with any of the alleged misconduct. Plaintiff does not allege that LeadingResponse was barred or required ***not* to** be barred, that LeadingResponse was aware of Daniel Miller's barred status, or that LeadingResponse had a duty to investigate either Daniel Miller's barred status or the offerings Mr. Miller made, which LeadingResponse was not involved in promoting. In other words, Plaintiff's allegations about Daniel Miller—even assumed to be true, as is the standard for Rule 12(b)(6) motions—have no bearing on the legal inadequacy of Plaintiff's claims against LeadingResponse.

      B.      **Plaintiff's New Factual Allegations Should Be Disregarded**

Plaintiff's Opposition again improperly injects dozens of new factual assertions and exhibits, including emails, regulatory filings, and marketing materials, as well as new legal theories. These materials are not referenced in or incorporated into the First Amended Complaint. As the Second Circuit has made clear, a district court ruling on a Rule 12(b)(6) motion may not consider affidavits or exhibits introduced in opposition papers. *Friedl v. City of New York*, 210 F.3d 79, 83–84 (2d Cir. 2000). "When matters outside the pleadings are presented in response to a 12(b)(6) motion, a district court must either exclude the additional material and decide the motion

2

on the complaint alone or convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." *Id.* at 83 (cleaned up). "A district court errs when it considers affidavits and exhibits submitted by [the parties], or relies on factual allegations contained in legal briefs or memoranda, in ruling on a 12(b)(6) motion to dismiss." *Id.* "Vacatur is required even where the court's ruling simply makes a connection not established by the complaint alone or contains an unexplained reference that raises the possibility that it improperly relied on matters outside the pleading in granting defendant's Rule 12(b) motion." *Id.*

Plaintiff was granted an opportunity to amend his Complaint following LeadingResponse's original 12(b)(6) Motion. (April 4, 2025, Order, Document 15.) Plaintiff instead filed an Opposition with a slew of new facts and alleged counts. (April 24, 2025, Document 16.) On May 29, 2025, the Court held granted Plaintiff yet another opportunity to amend his Complaint. Plaintiff then filed an Amended Complaint with even less factual allegations towards LeadingResponse than the first. (Amended Compl., Document 42.) Now, Plaintiff again attempts to bring in many new facts, exhibits, and an affidavit via his Opposition. (July 29, 2025, Document 48-1.) If Plaintiff wanted to include new facts and allegations that had actual merit, he should have included them in his Amended Complaint. Plaintiff has instead chosen to shoehorn additional allegations into his Opposition, presumably aware it was procedurally improper.

By way of example (although not an exhaustive list), Plaintiff's Opposition includes the following facts and exhibits which are all wholly outside the pleadings:

- Plaintiff's Attorney Affirmation of Kevin P. Krupnick;
- Exhibits D through I, which include various communications not included in the Amended Complaint;

3

- Facts related to emails with LeadingResponse and Derek Scarborough;

- References to co-Defendant Derek Scarbrough;

- References to Exhibits A and B which do not appear on the record at all; and

- The entirety of Section V. E. of the Opposition.[1]

To be clear, every new fact and exhibit that is not explicitly contained in the Amended Complaint should not be considered and should be excluded by the Court. *See Kopec v. Coughlin*, 922 F.2d 152, 154 (2d Cir. 1991) (finding trial court erred where it considered matters outside the pleadings under 12(b)(6). Where matters outside the pleadings are offered the Court has only two options: (1) the Court may exclude the additional material and decide the motion on the complaint alone, or (2) the Court may convert the motion to one for summary judgement under Fed. R. Civ. P. 50. *Id.* Here, the Court should exclude the evidence, particularly where Plaintiff was given multiple direct opportunities to amend.

Having already amended once with an order by this Court that no further amendments would be permitted, Plaintiff cannot now circumvent that order through amendment by affidavit and exhibits. If these materials and allegations were critical to Plaintiff's claims, he should have included them in the Amended Complaint. Because he failed to do so, they must be excluded from the Court's consideration.

C. **Plaintiff Still Fails to Allege Causation or Standing**

Even ignoring Plaintiff's improper amendments to his claims by way of his Opposition, none of the additional facts would change Plaintiff's causation and standing problem. Indeed,

---

[1] Plaintiff refers to the "contemporaneous documentary record" and LeadingResponse's failure to contest the authenticity of that record. However, LeadingResponse could not contest something that was never previously alleged. Exhibits A and B appear nowhere in the record and the rest of the exhibits are newly improper facts attached to Plaintiff's Opposition.

there is still no injury to Plaintiff allegedly caused by LeadingResponse.

Plaintiff's fundamental theory collapses under its own timeline. According to the First Amended Complaint, Plaintiff invested $1.6 million in two tranches: $100,000 in June 2021 and $1.5 million in January 2022. (Amended Compl. ¶¶ 32, 33.) The seminar campaign involving LeadingResponse did not occur until months later, in late 2022, after Plaintiff's funds were already depleted. (*Id.* at ¶¶ 37, 38.) As a result, the only asserted injury tangentially related to LeadingResponse is the claim that Plaintiff's $150,000 investment was diverted, with his knowledge and approval, to promote the Argo Private Client Group, Ltd. ("Argo") fund via investor seminars. Notably, Plaintiff's new facts directly contradict his Amended Complaint. The Amended Complaint alleges that the $150,000 was spent "without his knowledge or authorization," but now Plaintiff claims that "Plaintiff reluctantly agreed to permit the use of approximately $150,000 in remaining funds for [financing the seminars]." (*Id*. at ¶ 38; Op. Memorandum, Document 48-1, p. 5.). Plaintiff does not even accept his own allegations as true.

Plaintiff cannot, on one hand, claim to have authorized the use of his remaining funds in hopes of salvaging his failed investment and, on the other, sue a third-party vendor for executing that effort. This undermines both factual causation and standing. *See Chevron Corp. v. Donziger*, 833 F.3d 74, 121 (2d Cir. 2016) ("traceability requirement focuses on whether the asserted injury could have been a consequence of the ***actions of the defendant***.") (emphasis added). Plaintiff's own allegations state that LeadingResponse was a post-loss participant in an effort Plaintiff endorsed.

Plaintiff cites several cases to support his standing and causation argument—but to no avail. *Reese v. Triborough Bridge* relates to traffic toll violations and makes no mention of securities law, causation, or standing issues. *See Reese v. Triborough Bridge & Tunnel Auth.*, 91

5

F.4th 582 (2d Cir. 2024). Another case cited by Plaintiff, *SEC v. Zandford*, 535 U.S. 813 (2002), at least relates to securities law but has no bearing on Plaintiff's failure to plead causation, as it deals with a defendant's sale of plaintiff's securities where defendant had a fiduciary duty to plaintiff. The final case Plaintiff cites discusses causation but is factually dissimilar in that it does not address a third-party vendor and instead discusses the actions of a bank-purchaser of securities that was intimately involved in multiple stages of the transaction before and after. *See In re Parmalat Sec. Litig.* 376 F. Supp. 2d 472 (S.D.N.Y. 2005).

      A securities-fraud plaintiff "must prove both transaction and loss causation." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172 (2d Cir. 2005) (dismissing a Rule 10b-5(b) claim for failure to plead causation). "Transaction causation is akin to reliance, and requires only an allegation that but for the claimed misrepresentations or omissions, the plaintiff would not have entered into the detrimental securities transaction." *Id*. (citation omitted.) Looking only to the Amended Complaint, there is no allegation of any sort that suggests Plaintiff relied on anything LeadingResponse said or did. Plaintiff's alleged detrimental securities transaction occurred between himself and Argo, Daniel Miller, and Ryan Nelson. (Amended Compl. ¶ 26.) There is no allegation that LeadingResponse was involved in any securities transaction that involved Plaintiff, let alone that Plaintiff relied on a misrepresentation or omission by LeadingResponse. Indeed, there is no allegation that LeadingResponse omitted or misrepresented anything. (*See generally* Amended Compl.)

      Plaintiff improperly alleges facts newly pointing the finger at LeadingResponse for failing to perform due diligence related to organizing seminars that other people attended. Ignoring that these facts are nowhere in the Amended Complaint and taking the additional facts as true, Plaintiff still does not allege any reliance on this supposed omission by LeadingResponse. Plaintiff suffered

all his losses from a transaction that occurred before he had *any* contact with LeadingResponse.

Loss causation "is the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff." *Lentell*, 396 F.3d at 172. "[I]n addition to showing that but for the defendant's misrepresentations the transaction would not have come about, the defendant must also show that the misstatements were the reason the transaction turned out to be a losing one." *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir. 1994) (citation omitted). "Furthermore, when factors other than the defendant's fraud are an intervening direct cause of a plaintiff's injury, that same injury cannot be said to have occurred by reason of the defendant's actions." *Id*. Plaintiff has not alleged anything that comes close to meeting the loss causation standard. Indeed, Plaintiff's memorandum states the opposite: that LeadingResponse's advertising of seminars was intended to increase the value of the Argo fund, which is why Plaintiff *agreed* to have his investment used to pay LeadingResponse.

The causation theory advanced by Plaintiff boils down to this: (i) Plaintiff was tricked into investing into a losing fund; (ii) Plaintiff directed and consented to the final remnants of his otherwise lost investment to be used to pay LeadingResponse; (iii) Plaintiff regrets that payment and now claims that LeadingResponse is liable for not investigating the fund. But Plaintiff does not explain how or why LeadingResponse could or would perform due diligence on a transaction that it had no part in and indeed occurred *before* LeadingResponse ever had contact with Plaintiff. And even taking Plaintiff's new allegations as true, none of his proposed facts prove causation of damages to Plaintiff *by* LeadingResponse under any theory advanced by Plaintiff.

    **D.**    **Plaintiff Fails to Plead a Section 12(a)(1) Claim Against LeadingResponse**

The Amended Complaint makes no mention of LeadingResponse in any conceivable way that could be connected to a Section 12(a)(1) claim, although Plaintiff improperly advances new facts in his Opposition that still do not save his pleading. Plaintiff's recently alleged facts still do

7

not satisfy multiple elements of a Section 12(a)(1) claim. Indeed, Plaintiff must allege a sale or offer to sell securities by LeadingResponse and the use of interstate commerce in connection with the sale. *In re Laser Arms Corp. Sec. Litig.*, 794 F. Supp. 475, 481 (S.D.N.Y. 1989), *aff'd*, 969 F.2d 15 (2d Cir. 1992). But Plaintiff has failed to do so.

Even armed with new facts, Plaintiff still does not allege that LeadingResponse sold any securities. Plaintiff misstates the contents of his own exhibits by stating that LeadingResponse employee Derek Scarborough communicated with Plaintiff regarding "campaign logistics and access to post-event investor data." (Op. Memorandum, p. 10, Document 48-1.) But no such communication took place. Plaintiff cites Exhibit D, in which Mr. Scarborough explained that, "we handle invitation design, list targeting, mailing RSVP tracking, and even follow up calls." (Op. Memorandum, Documents 48-2.) Plaintiff misrepresents these communications by claiming that LeadingResponse designed the investor presentations—which, as Exhibit D makes clear, is not true. LeadingResponse designed invitations, that is, mailers. LeadingResponse had no role whatsoever in the content of the seminars or control over who is speaking at the seminars, as described in Exhibit D to Plaintiff's Opposition. The presentation and its content are entirely the responsibility of the client, which in this case was Argo. And, further, Plaintiff made no allegations about the content or speakers of the seminars. There is no allegation of any person presenting or any statement at any seminar, let alone a statement made by LeadingResponse that could be considered an offer of sale of a security.

Through his Opposition, Plaintiff claims that LeadingResponse solicited purchases of a security for financial gain sufficient to be a "seller' of securities under Section 12(1)(a). *See Pinter v. Dahl*, 486 U.S. 622 (1988); 15 U.S.C.A. § 77l(a)(1). But Plaintiff's reliance on *Pinter* misses the mark. Even if LeadingResponse was a securities seller (which it is not), it was not a seller to

8

Plaintiff. The case plainly states, "a prospective buyer has no recourse against a person who touts unregistered securities to him if he does not purchase the securities." *Pinter*, 486 U.S. at 644. Plaintiff does not allege he purchased any securities from LeadingResponse or as a result of LeadingResponse's promotion of seminars.

LeadingResponse is not alleged to have communicated with Plaintiff prior to his investments or encouraged him to invest. LeadingResponse is not even alleged to have had knowledge of the Argo fund prior to mid-2022. Plaintiff does not allege that he relied on any material disseminated by LeadingResponse in deciding to invest. There is no allegation that LeadingResponse acted with any financial stake in the success of the offering, only that it was paid for marketing services months later. This is not solicitation of securities, and doubly not solicitation ***to Plaintiff***. Even considering Plaintiff's improper exhibit communications with a LeadingResponse, they all occurred ***after*** the securities were purchased. Section 12 liability only attaches to those who participate in pre-sale solicitation. Plaintiff's claim fails as a matter of law.

### E. Plaintiff Fails to Plead a Rule 10b-5 Claim against LeadingResponse

Plaintiff's Rule 10b-5 theory is similarly flawed. Nothing in the Amended Complaint comes close to alleging that LeadingResponse would be liable in any way, despite the improper addition of new facts in the Opposition. Indeed, Plaintiff fails to allege multiple elements of a 10b-5 claim. Plaintiff must allege that LeadingResponse misrepresented or omitted a material fact; instead, all that Plaintiff alleges is that LeadingResponse omitted information about Daniel Miller. But Plaintiff does not allege that LeadingResponse knew any information about Daniel Miller's barred status. In other words, LeadingResponse could not misrepresent information it did not know, and Plaintiff fails to plead such an omission. Plaintiff must also allege an intent to deceive, but Plaintiff only states a legal conclusion that LeadingResponse's failure to investigate Daniel Miller amounts to recklessness. This does not satisfy the standard under Rule 10b-5. Even if

9

Plaintiff could allege an omission and intent, no omission is directed towards plaintiff and Plaintiff does not allege relied on any such omission to purchase securities and so as discussed above there is no causation. At most, Plaintiff alleges that LeadingResponse failed to screen Argo's offering for compliance but does not allege why LeadingResponse would be required to do so. Plaintiff's theory borders on strict liability for service providers and is unsupported by any legal precedent.

### F.     Plaintiff Fails to State an Unjust Enrichment Claim

Plaintiff's unjust enrichment claim collapses under the same defect as the rest of his inadequately pleaded allegations—because he fails to claim any actionable conduct, an improper benefit, or an inequitable retention of fees. Plaintiff lists two cases in support, one of which LeadingResponse has been unable to locate and does not appear to be a real case. (*See* Opp. Br., citing "*Midlantic Nat'l Bank v. Havens*, 1994 WL 760822, at *4 (S.D.N.Y. Dec. 27, 1994)".) The other makes no mention of unjust enrichment despite Plaintiff stating the case found "unjust enrichment adequately pled." *See In re Refco Inc. Sec. Litig.*, 826 F. Supp. 2d 478 (S.D.N.Y. 2011).

Plaintiff's improper addition of new facts also does not save his claim. Even considering the new facts alleged, there still is no allegation that meets the second and third elements of unjust enrichment. Plaintiff merely states a legal conclusion that LeadingResponse was enriched at Plaintiff's expense and that it would be inequitable for LeadingResponse to retain payment for services it rendered. "[F]ormulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Plaintiff does not allege that he paid LeadingResponse. Plaintiff does not allege why payment for services could constitute an inequity.

In the context of alleged securities fraud acts joined with a claim for unjust enrichment action, where the securities actions have failed "[t]here is little in equity and good conscience that weighs in favor of the return of the fees." *Ashland Inc. v. Morgan Stanley & Co.*, 652 F.3d 333,

339 (2d Cir. 2011). Plaintiff's securities claims and additional unjust enrichment claim, all of which are only group plead against "Defendants" must fail. Even under Plaintiff's new facts he authorized the use of his funds for seminars, was introduced to the vendor, and understood the scope of work. That Plaintiff now regrets the expenditure does not transform a lawful business transaction into an unjust enrichment.

### III.     CONCLUSION

Plaintiff's pleading is grossly lacking details that Plaintiff can never provide because LeadingResponse was only engaged in its legitimate business. Plaintiff's failure is further cemented by Rule 9(b)'s particularity requirement. There are no allegations of who said what to whom, when, and why it was fraudulent in any way attributable to LeadingResponse. The omission of a disqualifying event by the fund's principals cannot be imputed to a marketing vendor months later with no pleading of actual knowledge.

Plaintiff's Amended Complaint confirms what has been clear from the outset: LeadingResponse played no role in the offering, sale, or management of Plaintiff's investment. It did not solicit Plaintiff's investment, make any material misrepresentation, or retain any funds unjustly. Plaintiff's theory amounts to nothing more than guilt by association and after-the-fact finger-pointing. The Court has granted Plaintiff multiple opportunities to correct his pleadings,

and he has failed to do so. Thus, the Complaint should be dismissed with prejudice. Defendant LeadingResponse respectfully asks this Court to dismiss Plaintiff's Complaint in its entirety.

                                                  Respectfully submitted,

                                                  HONIGMAN LLP
*Attorneys for RME, LLC, d/b/a LeadingResponse*

                                                  By: /s/ *Gabriel E. Bedoya*
                                                        Gabriel E. Bedoya (5044334)
                                                  2290 First National Building
                                                  660 Woodward Avenue
                                                  Detroit, MI 48226
                                                  (313) 465.7254

Dated: August 5, 2025                            gbedoya@honigman.com

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that the word count of the LeadingResponse's Memorandum of Law in Support of its Motion to Dismiss the Complaint is 3,491 words as identified in S.D.N.Y. L.C.R. 7.1(c).

Dated: August 5, 2025                             By:  *Gabriel E. Bedoya*
                                                                  Gabriel E. Bedoya (5044334)
                                                                  2290 First National Building
                                                                  660 Woodward Avenue
                                                                  Detroit, MI 48226
                                                                  (313) 465.7254
                                                                  gbedoya@honigman.com

61591976.3